# SHOENER v. COMMONWEALTH OF PENNSYLVANIA.

## ERROR TO THE SUPREME COURT OF THE STATE OF PENNSYLVANIA.

### No. 161. Argued October 28, 1907.—Decided December, 2, 1907.

One is not put in jeopardy if the indictment under which he is tried is so radically defective that it would not support a judgment of conviction, and a judgment thereon would be arrested on motion.

Where the defense is that the accused is put in jeopardy for the same offense by his trial under a former indictment, if it appears from the record of that trial that the accused had not then or previously committed, and could not possibly have committed, any such crime as the one charged, and therefore that the court was without jurisdiction to have rendered any valid judgment against him—the accused is not, by such trial, put in second jeopardy for the offense specified in the last or new indictment.

Where a conviction for embezzlement has been reversed on the ground that the money had not and could not be rightfully demanded when the indictment was found the accused is not put in second jeopardy by the trial on another indictment for embezzlement after demand rightfully made.

216 Pa. St. 71, affirmed.

In a civil action brought by the County of Schuylkill, Pennsylvania, in 1901, against Shoener, the present plaintiff, for the amount of certain fees alleged to have been collected by him, as the clerk of a Quarter Sessions Court, but withheld by him from the county treasury, a judgment was rendered in favor of the county for $18,245. That judgment was affirmed upon appeal by the Supreme Court of Pennsylvania on May 4th, 1903. *Schuylkill County* v. *Shoener*, 205 Pa. St. 592.

Shoener was then proceeded against by indictment under section 65 of the Penal Code of Pennsylvania of 1860, which section is in these words: "If any State, county, township or municipal officer of this Commonwealth, charged with the collection, safekeeping, transfer or disbursement of public money, shall convert to his own use, in any way whatsoever, or shall use by way of investment in any kind of property or merchandise, any portion of the public money entrusted to him for

collection, safekeeping, transfer or disbursement, or shall prove a defaulter, or fail to pay over the same when thereunto legally required by the State, county or township treasurer, or other proper officer or person authorized to demand and receive the same, every such act shall be deemed and adjudged to be an embezzlement of so much of said money as shall be thus taken, converted, invested, used or unaccounted for, which is hereby declared a misdemeanor; and every such officer, and every person or persons whomsoever aiding or abetting, or being in any way accessory to said act, and being thereof convicted, shall be sentenced to an imprisonment, by separate or solitary confinement at labor, not exceeding five years, and to pay a fine equal to the amount of money embezzled." Pa. L. 1860, 385, 400.

This section was construed by the Supreme Court of Pennsylvania in *Commonwealth* v. *Mentzer*, 162 Pa. St. 646, the court holding that each of the acts enumerated in the statute was a distinct and separate offense, although they might be so entirely parts of the same transaction as to constitute but one offense; that whether particular acts were so combined as to make one offense depended upon the facts in each case, and raised a question of fact for the jury.

The indictment was returned November 14, 1903—the date is important—and contained thirteen counts, those other than the fourth, eighth and twelfth counts in substance charging the accused with converting public funds to his own use, and the fourth, eighth and twelfth counts charging him only *with failing to pay over the public moneys that came into his hands,* when thereunto legally required by the county. The accused was acquitted January 6, 1904, on all the counts except the fourth, eighth and twelfth, and on those counts he was convicted. On appeal to the Superior Court the conviction was sustained, 25 Pa. Superior Ct. 526, but on appeal from that court to the Supreme Court of Pennsylvania the judgments of conviction in both the lower courts were reversed June 22, 1905, and the accused was discharged from the recognizance

which he had executed. *Commonwealth* v. *Shoener*, 212 Pa. St. 527.

In the opinion of the Supreme Court it was stated that the only demand ever made on the accused was in a letter to him from the County Controller, under date of December 30, 1902. But that demand, the court said, was made at a time when the question of the right of the accused to retain the moneys he had retained was, by agreement of the county, pending and undecided in the civil court. The court, after observing that it was competent for the county to have entered into such an agreement, said (p. 531): "How could any demand have been made at that time that the defendant was bound to heed? . . . The failure to pay on demand, as contemplated by the statute under which he is indicted, is a failure to pay that which, at the time the demand is made, clearly belongs to the county making the demand, and does not apply to a case where demand is made to pay during the pendency of the dispute as to who is entitled to the money, and which dispute, by the agreement of both parties to it, is pending determination in the courts. . . . In refusing to pay over at the time the alleged demand was made he did just what any other man, similarly situated and with due regard to his rights, would have done; and it is a perversion of the sixty-fifth section of the Act of March 31, 1860, to attempt to apply it to a case like this. The only evidence of a demand to pay over was the [Controller's] letter. This was written, and received by the appellant, at a time when the county, by its own agreement, could not have enforced any civil liability against him, and in refusing to comply with the notice to pay he was standing on his right not to do so until it was determined that the county was entitled to receive the money. The learned trial judge charged the jury that the institution of the suit in Common Pleas of the county was a legal demand for the payment of the money, and should be regarded as such demand in the prosecution of the appellant on the counts charging him with failure to pay over on demand. In the civil courts constructive de-

mands may be and are recognized, but not so in a criminal court in the prosecution for an offense having as one of its statutory ingredients a refusal to pay on demand. A demand there means actual demand. The only actual demand that the Commonwealth pretends to have made was the Controller's letter. It was written after the institution of the civil suit and after the distinct agreement by the county that the question of the defendant's liability should be judicially determined. Before being so determined there was no liability to be enforced against him civilly, and, therefore, no demand to be made upon him that he was bound to recognize. He has been acquitted on the counts charging him with a conversion of the public funds to his own use, and there was *no evidence to sustain the conviction on the charge that he had failed to pay over after having been thereunto legally required on demand made*. The eleventh assignment complains of the error of the court below in instructing the jury that there had been legal demand made upon the defendant to pay over the fees. This assignment should have been sustained. If there had been proper instructions as to a legal demand, the defendant would have been acquitted on the counts on which he was convicted. The remaining assignments need not be considered. The judgment of the Superior Court is reversed, as is that of the court below, and the defendant is discharged from his recognizance."

Subsequently, on June 30, 1905, the county made another and formal demand upon Shoener to pay over $7,243.28, that being the balance of the fees or moneys then retained by him, and ascertained, on auditing of his accounts, to belong to the county. This demand was disregarded and, on September 4, 1905, the present new indictment was found, charging only one of the offenses specified in the statute, namely, that the accused had failed, on demand, to pay into the county treasury the above sum of $7,243.28.

The defendant pleaded, among other things: that the present indictment was for the same offense as that specified in the first indictment; that his acquittal on the first nine counts of the

former indictment was an acquittal of the charge contained in the present indictment, and that after the reversal of the judgment of conviction on the fourth, eighth and twelfth counts he could not be again prosecuted for the same offense.

Referring to the opinion of the Supreme Court in the former prosecution, the trial court, in its charge to the jury, said: "When that opinion was filed in the Supreme Court of Pennsylvania, and subsequently here, and the proceedings of the previous trial were reversed, there was no crime that this defendant was called upon to answer for because the Supreme Court declared that the demand that had been made upon him was illegal, had no right to be made, and he was not bound to obey it, and therefore not bound to pay over the money when they called on him in December, 1902, because the county had no right to call on him then for this money; but they were bound to wait until after the Supreme Court as well as this court decided the question of whether or not he had any claim or right to that money. . . . Now, gentlemen of the jury, under this state of facts, I come to the conclusion that there was no crime to try when he was tried before; that the crime that is now tried in this indictment exists only since the actual demand was made, which the language of that Supreme Court opinion requires to be made before he is required to pay over."

The defendant was convicted and sentenced to imprisonment for two and a half years.

The judgment of conviction was affirmed (*Commonwealth* v. *Shoener*, 30 Pa. Superior Ct. 321; 216 Pa. St. 71), the Supreme Court saying (216 Pa. St. 80): "In support of his plea of *autrefois acquit*, the appellant relies upon our reversal of the former judgment against him. The jury on the trial of the first indictment found him guilty of having failed to pay over the license fees in his hands after demand had been made upon him to do so. Our reversal of the judgment on that verdict did not acquit him of the offense charged against him in the present indictment. All that we decided was, that, as the county of Schuylkill could not, at the time the prosecution was instituted,

have made a legal demand upon the appellant for the payment of the fees in his hands, the statutory offense of failing to pay over *had not been committed.* He was discharged from his recognizance simply because the prosecution against him had been instituted before the offense charged against him *was or could have been committed under the admitted facts of the case.* He was, therefore, never in jeopardy. If, after his conviction, the court below had arrested judgment on the verdict, he would have been in the same situation in which our reversal of it placed him, but he could not have pleaded the arrest of the judgment as a bar to a new indictment against him for an offense subsequently committed, for he never was in peril."

The plaintiff insists that his trial and conviction on the present indictment would subject him to jeopardy a second time for the offense of having failed to pay over on proper demand, thereby depriving him of his liberty without due process of law, in violation of the Fourteenth Amendment of the Constitution of the United States.

*Mr. William Wilhelm* and *Mr. E. B. Sherrill,* with whom *Mr. Charles A. Douglas,* was on the brief, for plaintiff in error:

By his trial and conviction on the second indictment, plaintiff in error has been twice placed in jeopardy for the same offense.

By long settled practice, as well as by express statutory enactment, the power of the Supreme Court of Pennsylvania over the decrees and judgments of inferior courts of the State is plenary. Where error is committed the Supreme Court is not compelled to remand the case to the lower court for a new trial, but it is given power in such case to itself do what the trial court should have done. This power is expressly conferred by the act of the General Assembly of Pennsylvania of May 20, 1901.

The power expressly conferred by this act had been exercised by the Supreme Court for many years prior to the passage of the act. *Drew* v. *Commonwealth,* 1 Whart. 281; *Daniels* v.

*Commonwealth*, 7 Barr, 371; *Clellans* v. *Commonwealth*, 8 Pa. St. 223; *Beale* v. *Commonwealth*, 25 Pa. St. 11.

The trial court should have directed a verdict for the defendant, but it having failed to do so, the Supreme Court, by virtue of the powers vested in it, proceeded to do what the trial court should have done, and instead of remanding the case, reversed the judgment and directed the discharge of plaintiff in error, as effectually disposing of the charge against plaintiff in error as if he had been acquitted by the verdict of the jury on all of the counts of the indictment.

The crime of embezzlement with reference to this license money was committed, if committed at all, prior to the finding of the indictment in the first case, and as plaintiff in error was acquitted in that case of the charge of embezzling that money, he cannot be tried in this case on the charge of embezzling the same identical money, but is protected by the constitutional provision against double jeopardy. Bishop, Criminal Law, Vol. 1, § 1042, *et seq.; Shepherd* v. *People*, 25 N. Y. 406.

The sentence under which plaintiff in error now rests puts him twice in jeopardy for the same offense, and such double jeopardy abridges his privileges and immunities as a citizen of the United States and deprives him of his liberty without due process of law.

Due process of law requires the observance of those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions. *In re Kemmler*, 136 U. S. 436; *Allen* v. *Georgia*, 166 U. S. 138; *Howard* v. *Kentucky*, 200 U. S. 164.

*Mr. Guy E. Farquhar* and *Mr. C. E. Berger*, with whom *Mr. Irvin A. Reed*, was on the brief, for defendant in error.

MR. JUSTICE HARLAN, after making the foregoing statement, delivered the opinion of the court.

The contention that, by the judgment of the Supreme Court of Pennsylvania, the plaintiff in error has been deprived of a

right secured to him by the Constitution of the United States must be overruled. He has not been twice placed in jeopardy for the same offense. Upon the hearing of the case arising out of the first indictment the Supreme Court of Pennsylvania, construing the statute under which the defendant was prosecuted, and looking at the undisputed facts appearing of record, adjudged that he had not then committed any criminal offense; that he had not failed to pay over moneys belonging to the county upon any demand, disregard of which subjected him to criminal liability; consequently, it was held that no valid judgment of conviction could have been rendered against him in the first prosecution for failing to pay over the moneys in question, or any part thereof, on the particular demand shown in the record of that prosecution. These were questions of local and general law which it was the province of the Supreme Court of Pennsylvania to determine conclusively for the parties. They presented no question of a Federal nature.

Assuming, then, that no valid judgment could have been rendered against the accused upon the first indictment for disregarding the demand upon which that indictment was based, it necessarily follows, as held by the Supreme Court of Pennsylvania, that that prosecution did not put the accused in jeopardy in respect of the particular offense specified in the last indictment. That offense was never committed until the demand of June 30, 1905 was disregarded. The defense of double jeopardy could not be sustained unless we should hold that the charge against Shoener in the first indictment could be sustained under the statute. But we cannot so adjudge without disregarding altogether the decision of the Supreme Court of Pennsylvania and without holding that an accused is put in peril by a prosecution which could not legally result in a conviction for crime. It is an established rule that one is not put in jeopardy if the indictment under which he is tried is so radically defective that it would not support a judgment of conviction, and that a judgment thereon would be arrested on motion. So where the defense is that the accused was put

in jeopardy for the same offense by his trial under a former indictment, if it appears from the record of that trial that the accused had not then or previously committed and could not possibly have committed any such crime as the one charged, and therefore that the court was without jurisdiction to have rendered any valid judgment against him—and such is the case now before us—then the accused was not, by such trial, put in jeopardy for the offense specified in the last or new indictment.

As it was thus correctly decided that the accused was not, by the present indictment, put in jeopardy for the second time for the same offense, we need not go further or consider any question of a Federal nature, and the writ of error must be dismissed.

*It is so ordered.*

